In the Matter of the Claim of FRED SMITH, Respondent, against CITY OF ROCHESTER, Appellant.

WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, November 24, 1954.

*Honora A. Miller, Corporation Counsel* (*Samuel J. Danno* of counsel), for appellant.

*Nathaniel L. Goldstein, Attorney-General* (*Gilbert M. Landy* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

BERGAN, J. Claimant worked as a laborer for the City of Rochester, a self-insured employer. On November 29, 1951, while raking leaves in a city park he fell and was injured. The city duly filed a report of the injury and the employee filed a claim for compensation. The city neither paid any compensation nor did it file a notice that it controverted the claim on the C-7 report used for that purpose.

The position it took before the board was, and on this appeal continues to be, that until an award of compensation is actually made it was not under any requirement to pay compensation; and, indeed, that it could not lawfully pay compensation until an award had been made. In this respect the city would put itself and other municipal corporations under a somewhat different standard of obligation, at the time applicable to this compensation claim, in respect of the duty to pay compensation than that which would usually be expected of carriers and employers.

The general obligation to begin payment of compensation immediately in the absence of controversy is very well understood by employers and carriers alike and is quite plainly stated in simple statutory language. "The compensation herein provided for" shall be paid "promptly in like manner as wages" runs the statute, "without waiting for an award by the board". (Workmen's Compensation Law, § 25.) The exception is in

the singular, where the "right to compensation" is controverted by the employer.

The common obligation of employers, therefore, is to pay compensation at once in the absence of a controversy. The Legislature has used rather explicit language to provide that when a municipal corporation undertakes to insure itself it is bound by the usual rules affecting a self-insured employer. A city electing to become a self-insurer shall be obliged to meet "all" the requirements of private employers so electing except furnishing proof of financial responsibility (Workmen's Compensation Law, § 50, subd. 3; subd. 4, par. a).

We would say at once, therefore, that the obligation for the payment of compensation, as to time and amount as well as for the kinds of risks in which the obligation would arise, is exactly the same in the case of the municipal corporate employer as in the case of any other employer. We feel required to examine, however, the argument pursued by the city in favor of an exception based on an ingenious construction of the statute which would create an exception for the city as to the time when it ought to begin to pay compensation even though it be bound by the general rule in everything else.

The argument of the city for the exception rests on the way it reads the language of subdivision 4 (par. c) of section 50 of the Workmen's Compensation Law as it was in effect at the time here in question. This subdivision provided that when compensation "is awarded" to an employee of a self-insured city, the treasurer on presentation of the award shall forthwith begin payment "of it" in accordance with the Workmen's Compensation Law. (L. 1946, ch. 979.) It further provides where the money shall be obtained and if not available for this purpose, how it shall be appropriated.

The fact that this mandatory duty is imposed in respect of awards made, with implementary provisions for raising the money, does not excuse the self-insured municipal corporation at once from all other obligations imposed on it by law. That special language written in the statute requiring, as to an award, the payment "of it", does not excuse other and additional obligations resting on the city to conform with a statute which in plain words requires the beginning of the payment of compensation "in like manner as wages" without waiting for an award. The city was surely required to pay the wages of its employees; and it was required either to controvert the claim for compensation or to pay the compensation without award.

No implementing directions to its treasurer were needed to make this obligation mature. There are many obligations of a city which arise from the operation of statutory language read in a unitary sense which arise without the necessity of a detailed mandate to a treasurer or other fiscal officer to pay or without prescribing minutely the precise source from which the money is to be raised.

A municipal corporation can incur an obligation and a duty to pay arising from the voluntary action it takes in pursuance to statutory authority; and the fact that funds to carry out the enterprise and the lawful undertaking of the city are not provided by the appropriating body or officers is usually not regarded as an answer to a lawfully incurred obligation.

The city, in such cases, takes the usual risks of default or of penalty. Here the city voluntarily undertook to qualify and to act as a self-insurer. It had no statutory exception from the usual obligations of an employer. On the contrary, it was required by a general statute to act with the same sense of obligation to meet '' all '' the '' requirements '' that private employers must meet with one difference not material here.

There are some collateral statutory references cited by both sides on the arguments addressed to construction. The board refers to the sentence appearing in section 25 providing that no penalty shall be '' applicable against a municipal corporation '' because of '' delay '' in the payment of benefits to volunteer firemen; and argues that if the Legislature had intended municipal corporations generally to be excepted from the obligation to pay compensation immediately in the absence of controversy, this special exemption in the case of volunteer firemen would not have been thought to have been needed.

The city, on the other hand, refers to an amendment to paragraph c of subdivision 4 of section 50, effective April 15, 1953 (L. 1953, ch. 755), and not directly germane to this controversy, which provides that the governing board of a city may authorize the fiscal officer to pay '' the compensation provided for in this chapter  *  *  *  without waiting for an award ''; and argues that it must have been the intention of the Legislature previous to this amendment, and at the time the controversy here arose. not to have authorized such payments.

We do not regard this additional grant of authority, which surely existed in any event by necessary implication, as a ground for deriving a legislative intent which would defeat a clearly stated purpose to place self-insured cities in the same general

position in respect of the payment of compensation as all others.

We conclude that the city was obligated under the requirements of the statute to provide the money, by whatever legal means of appropriation may have been required by its own law or general statutes, to pay promptly the applicable compensation if it did not wish to controvert the claim.

The referee imposed a penalty of $25 which the board has sustained, as a means of enforcing compliance. An additional problem arises in the case whether the penalty may be imposed under the facts of this case. The claim was filed January 11, 1952. The award was not made until June 2, 1952. No payment of compensation as such was made by the city until after this last date. The amendment to section 25 authorizing the imposition of a penalty was effective April 12, 1952 (L. 1952, ch. 671).

It authorized a penalty of $25 on the failure to file either a notice of controversy '' or begin payment of compensation '' as required by the statute. Although the accident occurred before the effective date of this amendment, the failure of the city to pay or to controvert continued in the face of its statutory duty after this amendment became effective for about two months before it began to pay compensation under the award and we regard this failure to pay after the amendment sufficient cause to incur the penalty.

The imposition of a penalty against a municipal corporation is not an entirely happy way of determining a legal controversy which the corporation argues in good faith, but it seems the most direct way in the situation here presented to get the question settled. Both sides agree that decision on the power to impose the penalty will be determinative of the legal soundness of the position of the city. Even under the amendment of 1953 the city argues that it has no obligation to pay compensation in advance of an award unless there is a specific authorization to pay by its legislative body to its fiscal officer.

We think its obligation to claimants injured in its employ is much broader than this and does not depend on its internal municipal fiscal arrangements. It incurs the same obligation to pay in the amounts and at the times that other self-insured employers incur when they elect to follow this alternative method of providing compensation. The referee in imposing the fine stated the matter very succinctly. He said to the city's counsel '' If you are going to be Self-insured you have to conform with the Compensation Law as does every other Self-insured Employer ''.

We agree that the power to impose the penalty reaches the underlying issues tendered by the arguments on both sides and we hold that the power exists under the facts presented by the record.

The decision should be affirmed, without costs.

FOSTER, P. J., COON, HALPERN and IMRIE, JJ., concur.

Decision affirmed, without costs. [See *post*, p. 844.]